■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JAMES O. BOOTHE, Respondent. [890 NYS2d 484]—

The court properly dismissed the insurance fraud count. The People allege that defendant, as chief operating officer of a managed health care provider, caused marketing plans containing false statements to be kept on file by the provider and submitted to contracting government agencies, enabling the provider to obtain Medicaid reimbursements to which it was not entitled. Penal Law § 176.30 prohibits fraudulent insurance acts involving thefts or attempted thefts in excess of $1 million. Under Penal Law § 176.05 (1), a fraudulent insurance act, as relevant here, consists of the presentation with fraudulent intent of a false written statement in connection with a policy for either commercial or personal insurance. It is undisputed that conduct involving health insurance does not come within that definition. Although in 1998 the· Legislature added a provision defining fraudulent health care insurance acts (Penal Law § 176.05), it neglected at that time to do anything to criminalize those acts. It left intact Penal Law § 176.30, and the other degrees of insurance fraud, which only criminalized fraudulent insurance acts.

It is plain from the statutory definitions that fraudulent *insurance* acts and fraudulent *health insurance* acts involve different conduct, that the latter type of conduct is not included in the former, and that only the former type is criminalized in Penal Law article 176. It should be noted that subsequent to the conduct alleged in this case, the Legislature enacted a separate health care fraud statute (Penal Law art 177).

"A statute must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisaged all the problems and complications which might arise" (*Lawrence Constr. Corp. v State of New York*, 293 NY 634, 639 [1944]). Regardless of whether the Legislature intended to criminalize

the newly defined category of fraudulent health insurance acts at the time it defined those acts, and regardless of whether its failure to do so was an oversight, "courts are not to legislate under the guise of interpretation" (*People v Finnegan*, 85 NY2d 53, 58 [1995], *cert denied* 516 US 919 [1995]; *see also People v Tychanski*, 78 NY2d 909 [1991]). While the Legislature's definition of certain conduct, accompanied by its neglect to criminalize that conduct, may have rendered the definition useless, the fact remains that the conduct in question was never criminalized under the statute at issue. Accordingly, defendant's alleged conduct did not constitute the crime of insurance fraud.

However, the court should not have dismissed the count alleging scheme to defraud (*see* Penal Law § 190.65). Although there may have been no evidence before the grand jury that defendant personally obtained any property from the scheme, the evidence and the instructions to the grand jurors would support an accessorial theory of liability.

The court also erred by dismissing three counts alleging falsifying business records in the first degree (Penal Law § 175.10). Under the circumstances alleged, the marketing plans were writings "kept or maintained by an enterprise for the purpose of evidencing or reflecting its condition or activity" (Penal Law § 175.00 [2]). The health care provider was required to maintain these records, as well as to file them with certain government agencies. Accordingly, the fact that defendant was also charged with offering a false instrument for filing (Penal Law § 175.35) in connection with these plans did not preclude prosecution for the separate act of fraudulently keeping them. Concur—Tom, J.P., Friedman, Nardelli, Buckley and Richter, JJ.